FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 19, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RANDOLPH V. PETERSON, an individual<br><br>Plaintiff,<br><br>v.<br><br>RYAN BEST, et al.,<br><br>Defendants. | NO. 2:22-CV-0219-TOR<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiff's Motion for Partial Summary Judgment (ECF No. 41), and Defendants' Motion for Summary Judgment (ECF No. 43). These matters were submitted for consideration with oral argument on December 14, 2023. The Court has reviewed the record and files herein, considered the parties' oral arguments, and is fully informed. For the reasons discussed below, Plaintiff's Motion for Partial Summary Judgment (ECF No. 41) is DENIED and Defendants' Motion for Summary Judgment (ECF No. 43) is GRANTED.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

# BACKGROUND

These motions arise out of a claim for legal malpractice against Defendants. Defendant Best and Defendant Best Law, LLC were part of a collection of attorneys and law firms which represented Plaintiff and his business, Tri-City Railroad Company, LLC, in *Peterson et al v. Port of Benton County et al*, in part a *qui tam* lawsuit, previously before this Court. ECF No. 1 at 6. The complicated and motion-practice heavy matter lasted from June 5, 2017, until June 7, 2021, and involved two separate appeals to the Ninth Circuit. *See generally* 2:17-CV-0191-TOR.

The lawsuit centered around two sets of *qui tam* claims. The direct claims addressed whether the Port of Benton fraudulently obtained money to perform maintenance without disclosing that they were contractually required to fund the maintenance with revenue from leasing the subject property and committed fraud by failing to maintain the trackage despite agreeing to do so per its 1998 agreement with the Department of Energy. *United States ex rel. Peterson v. Port of Benton Cnty.*, No. 2:17-CV-0191-TOR, 2019 WL 4979822, at *4 (E.D. Wash. Oct. 8, 2019), *aff'd sub nom. Peterson v. Port of Benton Cnty.*, 840 F. App'x 235 (9th Cir. 2021). The indirect questions consisted of whether the Port defrauded the federal government by not paying Railroad Retirement Act taxes and alleged failure to contribute to the Railroad Unemployment Insurance Act fund. *Id*. at *7. The

1  United States investigated the claims and declined to intervene on May 25, 2018.
2  ECF No. 49-1 at 5. Plaintiffs were ultimately unsuccessful in their claims, and the
3  Court awarded attorney's fees to the Port of Benton pursuant to 31 U.S.C. §
4  3730(d)(4). *Id.* at *10.
5       Plaintiff in this matter, a citizen of Montana, brought a claim of malpractice
6  against Defendants, under a theory of diversity jurisdiction, to recover at least the
7  $102,980.25, the fees paid, but now estimates the amount to be in excess of
8  $150,000. ECF No. 1 at 4, 12, 14. Plaintiff filed a motion for partial summary
9  judgment arguing no issue of material fact remain as to Defendants' deficiency in
10 representation in the underlying *qui tam* matter, as evidenced by the Court's ruling.
11 *See generally* ECF No. 41.
12      Defendants filed a cross motion for summary judgment, arguing that
13 Plaintiff cannot meet his burden of proof because he did not provide an expert
14 witness to explain the standard of care a reasonable attorney would have
15 undertaken as to the investigation of the *qui tam* claims. ECF No. 47 at 8.
16 Additionally, Defendants argue that Plaintiff himself did not sustain the damage as
17 a result of the underlying suit, but rather, his company Tri-City Railroad Company,
18 LLC ("TCRY"), organized as a Washington limited liability company and with its
19 principal place of business in Washington, paid the attorney's fees. *Id*. at 11.
20 Defendants contend that TCRY, solely owned and controlled by Plaintiff, assigned

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ~ 3

all its claims relating to the malpractice suit to Plaintiff in order to establish the necessary diversity of parties pursuant to 28 U.S.C. § 1332. *Id*. at 12.

## DISCUSSION

### I. Jurisdiction

United States District Courts have original subject-matter jurisdiction over cases between citizens of different states and in which the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). A plaintiff invoking a federal court's diversity jurisdiction has the burden of establishing that § 1332(a)'s diversity of citizenship and amount-in-controversy requirements have been satisfied. *See Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). For diversity jurisdiction purposes, artificial entities do not enjoy the same status as corporations, and the Supreme Court has not extended citizenship to such entities in their state of organization. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–196 (1990) ("We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members…"). Therefore, a limited liability corporation is a citizen "of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage*, LP, 437 F.3d 894, 899 (9th Cir. 2006).

Defendants argue that Plaintiff was assigned all claims to the malpractice damages in collusion to establish federal jurisdiction, because if TCRY were a

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

party to the lawsuit, there would be no diversity of citizenship.  ECF No. 43 at 11–12.  Plaintiff contends that 28 U.S.C. § 1332(a) has been satisfied because he is citizen of Montana, Defendant Best is a citizen of Washington, and Defendant Best Law, LLC is a Washington professional limited liability company.  ECF No. 50 at 8.  There is no dispute that the amount in controversy, at least $102,980.25, satisfies the requirement.

Under 28 U.S.C. § 1359, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."  The Ninth Circuit has determined that "[c]ertain kinds of diversity-creating assignments warrant particularly close scrutiny."  *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992).  Assignments by corporations to their officers or directors "'are presumptively ineffective to create diversity jurisdiction.'"  *Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir. 1989) (quoting *Simpson v. Alaska State Comm'n for Human Rights*, 608 F.2d 1171, 1174 (9th Cir. 1979)).  Moreover, evidence of a jurisdictional motive for the assignment will heighten the presumption of collusion.  *Yokeno*, 973 F.2d at 811.  The presumption may be overcome by a showing of a legitimate business reason for the assignment by the party asserting diversity.  S*ee Dweck*, 877 F.2d at 792.  However, articulating a plausible business reason for the transfer will not suffice, rather the business reason must be "sufficiently

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

compelling that the assignment would have been made absent the purpose of gaining a federal forum." *Yokeno*, 973 F.2d at 811.

Here, there is no issue of collusion because TCRY, by the nature of its existence as an LLC, takes on the citizenship of its only member, Plaintiff, who is a Montana resident, making it also a citizen of Montana. Thus, the absence of TCRY due to the assignment of claims to Plaintiff has no collusive effect on the Court's jurisdiction per 28 U.S.C. § 1332(a) because diversity of citizenship and the amount in controversy requirements would be satisfied even if it were a party to this lawsuit. Therefore, an assignment could not "create" diversity.

As to the validity of the assignment from TCRY to Plaintiff (essentially an agreement between himself), RCW 4.08.080 requires that an assignment of any judgment for the payment of money be in writing and signed by the assignor, thereby granting the assignee the ability to maintain an action against a potential obligor. However, in a case where the assignor testifies to the existence of the agreement, a verbal assignment is permissible. *Zimmerman v. Kyte*, 53 Wash. App. 11, 18 (1988) (citing *Ingle v. Ingle*, 183 Wash. 234, 237–38 (1935)); *see also DC3 Ent., LLC v. John Galt Ent., Inc.*, 412 F. Supp. 2d 1125, 1147 (W.D. Wash. 2006) ("[T]here is no greater barrier to an unwritten assignment than to an unwritten contract … 'Absent a statute to the contrary, no writing is necessary for an effective assignment… [a]ll contracts may be oral, except such as are specially

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

1  required by statute to be in writing.'").  Here, Mr. Peterson, as both Plaintiff and sole member of TCRY, submitted a declaration stating that all claims for malpractice against Defendants rest with him, which thereby extinguish any future claims by TCRY.  ECF No. 51-1 at 2.  Plaintiff has therefore created a valid assignment.

## II.  Motions for Summary Judgment

Plaintiff filed a Motion for Partial Summary Judgment, arguing that no issues of material fact remain as to Defendants' malpractice in the underlying lawsuit, specifically that Defendant Best did not properly investigate the *qui tam* claims before asserting them as a reasonable attorney would.  ECF No. 41 at 9.  Defendants filed a Motion for Summary Judgment, arguing, aside from the jurisdictional issue, that Plaintiff cannot prove that a violation in standard of care occurred because he failed to disclose an expert witness which is required given the complexity of the underlying case, and that damage to Plaintiff lacks proximity to the conduct of Defendants.  ECF No. 43 at 9, 10.

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the

non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier-of-fact] could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id*. at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id*. "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations). In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

To establish a claim for legal malpractice a plaintiff must prove the following elements: (1) the existence of an attorney-client relationship which gives rise to a duty of care to the plaintiff, (2) an act or omission by the attorney in breach of the duty of care, (3) damage to the plaintiff, and (4) proximate causation between the attorney's breach of duty and the damage incurred. *Trask v. Butler*, 123 Wash.2d 835, 839–40 (1994) (quoting *Hizey v. Carpenter*, 119 Wash.2d 251, 260–61 (1992)). A legal malpractice claim focuses on the attorney's alleged negligent performance. *See Hizey*, 119 Wash.2d at 261.

### A.  The establishment of an act or omission by the attorney in breach of the duty of care.

The attorney-client relationship existed between Plaintiff and Defendants, evidenced by the original lawsuit. *See generally* ECF No.1-1. As to the duty owed, an attorney must exercise the "degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in this jurisdiction." *Hansen v. Wightman,* 14 Wash. App. 78, 90 (1975). Plaintiff asserts that Defendants breached their duty of care as reasonable, prudent attorneys by failing to investigate the *qui tam* claims properly and failing to withdraw the lawsuit when it was discovered the claims were meritless. ECF No. 41 at 7. In response, Defendants assert that Plaintiff is unable to prove that a duty has been breached because he did not provide an expert

witness to discuss the complex duty undertaken in a *qui tam* case. ECF No. 47 at 8. Additionally, Defendants assert that Defendant Best did counsel voluntary dismissal of the *qui tam* claims. ECF No. 47 at 7.

Parties must make expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26 (a)(2)(D). A party that fails to follow a trial court's scheduling order for disclosure per Rule 26(a) will not be allowed to use the untimely witness to supply evidence at a hearing or trial, unless "the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citing *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008)).

In the context of legal malpractice, expert testimony may be required to determine whether an attorney's duty of care was breached because the "[l]aw is admittedly a highly technical field beyond the knowledge of the ordinary person." *Geer v. Tonnon*, 137 Wash. App. 838, 851 (2007) (citing *Lynch v. Republic Publishing Co.*, 40 Wash.2d 379, 389 (1952)). However, an expert witness is not required where the negligence alleged is within the common knowledge of lay persons. *Walker v. Bangs*, 92 Wash.2d 854, 858 (1979) (finding the area of maritime law to be an example of the kind of practice that requires specialized

knowledge, and therefore would necessitate expert witness testimony).  Courts have found that cases involving trial tactics or complicated areas of law are often difficult to prove, and therefore are instances which would require expert witness testimony.  *Id.*; *see also Geer*, 137 Wash. App. at 851-52 (determining that where expert witness testimony is needed and not provided, a party has not demonstrated that an attorney has breached any applicable duty); *Rose Townsend Tr. ex rel. Townsend v. Smith*, 179 Wash. App. 1010 (2014) (upholding dismissal on summary judgment of a claim of malpractice centered on an underlying bankruptcy lawsuit because "[t]he standard needed to be established by expert testimony in light of the complex facts of this action . . . the standard of care for Washington attorneys dealing in these matters was subject to proof by experts.  It was not a matter within the common knowledge of lay person or state trial judge.").  *But cf. Slack v. Luke,* 192 Wash. App. 909, 914 (2016) (determining no expert was required in a legal malpractice case where an attorney held herself out as a representative, accepted payment from the client, and then failed to file a lawsuit in time to meet the statute of limitation requirements); *Flax v. Schertler*, 935 A.2d 1091, 1107 (D.C. 2007) (internal citation omitted) (finding that "[t]he kind of care and skill that can be found within the jury's common knowledge may include typical failures to act; for example, allowing the statute of limitations to run on the client's claim [ ], or permitting entry of a default against the client.").

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

Plaintiff, admittedly in response to Defendants' filings, produced an expert witness who opined that Defendants breached their standard duty of care in the handling of the underlying lawsuit, based on a review of the Court's decision in the underlying lawsuit and related materials.[1] ECF No. 51-2 at 15. Plaintiff explained that an expert witness was not disclosed per the Court's scheduling order because, in his view, the case was not complex enough to warrant an expert. ECF No. 52 at 4. Defendants produced a timely expert witness, who stated that Defendants "complied with the standard of care of an attorney practicing in the Eastern District of Washington," because filing a *qui tam* lawsuit to preserve the ability to investigate the claim, coupled with Defendant Best's candor about the fee-shifting requirements and ultimate withdrawal on August 19, 2019, indicated that he acted

---

[1] Plaintiff also appears to cite repeatedly to *Hizey v. Carpenter* throughout his Motion for Summary Judgment while ignoring that the case disavows reliance on the Rules of Professional Conduct to make an argument for legal malpractice. *Hizey*, 119 Wash.2d at 263 ("Underlying our decision not to extend the CPR and RPC into the malpractice arena is the conviction that plaintiffs already have available adequate and recognized common law theories under which to bring malpractice actions."). Plaintiff's reliance on Defendant's alleged breach of the Rules of Professional Conduct is therefore improper. ECF No. 41 at 9.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

reasonably.  ECF No. 51-2 at 6–7.

Here, the Court finds that Plaintiff's explanation for delay in disclosure is dubious, as the extent of underlying litigation and complex nature of *qui tam* cases would require an expert to establish a standard of care.  The False Claim Act is a unique cause of action and has many moving parts.  As an overview, the False Claims Act requires a showing of "(1) a false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017).  Entire law school courses are dedicated to the False Claims Act.  A non-lawyer would require background on the government invention and relator process, as well as the extensive background of this case and the individual characteristics underlying claims made.  An expert would be expected to opine to as to the duty of care an attorney has to their client at each step in the *qui tam* action, including the investigative capabilities and requirements by a private party.  31 U.S.C.A. § 3730 (a)–(c).

Plaintiff's explanation that he did not name an expert witness because "a layperson in the state of Washington" would understand that a vexatious and frivolous claim should not be pursued, is not well taken by the Court.  ECF No. 50 at 5.  The underlying matter not only involved a dynamic action but included the

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13

work of several other law firms and contact with the United States Attorney's Office which required Defendants to navigate reasonable lawyers through a complicated landscape. How a prudent attorney should investigate a False Claims Act case and when it warrants dismissal is not in the purview of an average non-lawyer, and therefore the Court finds that disclosure of an expert witness was necessary in this case. The scheduling order required that Plaintiffs experts be disclosed on September 25, 2023, absent good reason.[2] ECF No. 24 at 3. Plaintiff

---

[2] In response to Defendants' Motion to Strike Plaintiff's Expert Witness (ECF No. 57), Plaintiff attempts to recategorize his expert witness as a rebuttal witness. ECF No. 59 at 3. To the extent that this argument is relevant, it fails for many of the same reasons. For one, Plaintiff bears the burden of establishing the duty of care, and to suggest that his witness was offered to "rebut" the arguments of Defendants' expert disrupts the cadence of burden shifting. *See U.S. Bank, N.A. v. Glogowski L. Firm, PLLC*, 339 F.R.D. 579, 581 (W.D. Wash. 2021) ("Since plaintiffs generally bear the burden of proof, the expert opinions they offer will rarely be 'intended solely to contradict or rebut' another expert's opinion. Instead, plaintiffs' expert opinions are generally aimed at establishing the elements of their claims."). Secondly, Plaintiff's witness' opinion does in fact support his case in chief, despite his assertion otherwise. ECF No. 59 at 6. Contained in his report,

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

1   disclosed his witness on November 13, 2023, nearly two months after the

2   scheduling order deadline, and three weeks after Defendants disclosed their expert

3   witness. ECF No. 51-2 at 5, 10. Plaintiff does not provide a satisfactory reason for

4   delay. As such, his expert witness opinion cannot be considered and is struck.

5         A collection of attorneys and law firms represented Plaintiff and his

6   business. Plaintiff and his expert use this Court's conclusions without specifying

7   what actions Defendant took. Ryan Best's declaration testifies that he

8   communicated to Mr. Peterson and his son about voluntarily dismissing the False

9   Claims Act suit. ECF No. 46 at 5. The Petersons refused to dismiss the claims.

10  Ryan Best withdrew from the case and afterward a Fourth Amended Complaint

---

Plaintiff's expert witness states "[i]t is my opinion that the standard of care for a lawyer filing and maintaining litigation on behalf of a client includes ensuring the lawsuit has merit sufficient to avoid being labeled as 'clearly frivolous,' 'vexatious' and 'brought primarily for the purpose of harassment,'" which appears to be aimed at the establishment of duty. ECF No. 51-2 at 15. This opinion is at odds with the rebuttal testimony standard under Rule 26(a)(2)(D)(ii) which defines a rebuttal expert report as one which is "intended solely to contradict or rebut" a report "on the same subject matter identified by another party." Therefore, the Court rejects the argument that Plaintiff's witness was intended in rebuttal.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ~ 15

was filed which continued to assert False Claims Act allegations. *Id*. at 6. Plaintiff has failed to establish the specific actions or inactions that Ryan Best or Best Law Office, PLLC committed to establish a breach of the duty of care. Therefore, Defendants' motion for summary judgment is granted.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment (ECF No. 41) is **DENIED**.

2. Defendants' Motion for Summary Judgment (ECF No. 43) is **GRANTED**.

3. Defendant's Motion to Strike Plaintiff's Expert Witness (ECF No. 57) is **DISMISSED as moot**.

4. The deadlines, hearings and trial date are **VACATED**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED December 19, 2023.

THOMAS O. RICE
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16